IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PETER WILLIS,                          )
                                       )
                Plaintiff,             )
                                       )
v.                                     )     Civil Action No. 3:13cv278-HEH
                                       )
KENNETH BLEVINS, JR., *et al.*,        )
                                       )
                Defendants.            )

MEMORANDUM OPINION
(Denying in Part and Granting in Part Defendants' Motion to Dismiss)

This is a civil rights action against a number of law enforcement and public officials based in Westmoreland County and the Town of Colonial Beach. It is presently before the Court on a Motion to Dismiss by Defendants Kenneth Blevins, Jr., Kenneth Blevins, Sr., and the Town of Colonial Beach (together the "Defendants") (ECF No. 15). For the reasons set forth herein, the Motion will be denied in part and granted in part.

## I. BACKGROUND

The claims against the Defendants stem from Plaintiff Peter Willis's ("Willis") arrest on March 15, 2011, for attempted first-degree murder, aggravated malicious wounding, and abduction of Carey Groendal ("Carey") on March 8, 2011. (Compl. ¶¶ 59–60, ECF No. 27.) Willis was incarcerated for 349 days in the Northern Neck Regional Jail before a jury acquitted him on May 8, 2012. (*Id.* at ¶¶ 89, 90.) The arrest and charges were largely based on Carey's statements about the events of March 8, 2011. (*Id.* at ¶ 57.)

Kenneth Blevins, Jr. ("Lt. Blevins"), a lieutenant with the Town of Colonial Beach Police Department, investigated Carey's allegations, and Edward O'Shea ("O'Shea"), an Assistant Commonwealth's Attorney for Westmoreland County, reviewed the evidence and prepared the case for trial. Throughout the proceedings, Lt. Blevins's father, Kenneth Blevins, Sr. ("Chief Blevins"), served as the Chief of Police. Willis contends that Lt. Blevins, as well as others, engaged in numerous acts of misconduct during the investigation and subsequent prosecution—for example, failing to conduct a full investigation, obtaining an arrest warrant without probable cause, fabricating evidence, and testifying untruthfully. (*Id.* at ¶¶ 91–123.) Willis further alleges that Lt. Blevins's misconduct directly resulted from Chief Blevins's failure to train, supervise, and control him. (*Id.* at ¶¶ 144–154.) Finally, he also attributes the claimed violations of his rights to the Town of Colonial Beach ("Colonial Beach") for its alleged custom, policy, and/or practice of failing to train, supervise, and control its police officers. (*Id.* at ¶¶ 155–165.)

The above allegations form the basis of the suit filed in this Court on May 2, 2013. Willis's Complaint asserts four 42 U.S.C. § 1983 claims against Lt. Blevins for: (1) false arrest; (2) malicious prosecution; (3) fabrication of evidence; and (4) conspiracy to fabricate evidence.[1] Willis alleges that Chief Blevins failed to train, supervise, and control Lt. Blevins, in violation of § 1983. Finally, he claims that Colonial Beach is liable under § 1983 for its policy, custom, and/or practice of failing to train, supervise,

---

[1] Although Willis styled his Fourth Cause of Action as a claim under 42 U.S.C. § 1985(2) in the Complaint, the Court understands that Willis intended to bring the claim for conspiracy to fabricate evidence under § 1983 and will construe it as a § 1983 claim. *See infra* Section III.D.

and control members of the Colonial Beach Police Department. The Defendants move this Court to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

## III. ANALYSIS

The Motion to Dismiss focuses on six claims against three defendants. The Court notes at the outset that many of the allegations in the Complaint are conclusory or lacking in detail. Despite these limitations, the Motion will be denied with respect to the claims against Lt. Blevins. However, the Complaint, which governs the Court's analysis, is inadequate to plead actionable claims against Chief Blevins and Colonial Beach, and the claims against them will be dismissed. The Court will address each claim individually.

### A. False Arrest

The First Cause of Action asserts a § 1983 claim for false arrest against Lt. Blevins. Willis alleges that "[a]cting under color of law, Lt. Blevins knowingly and deliberately arrested [him] without probable cause." (Compl. ¶ 93.) According to Willis, Lt. Blevins "sought warrants against [him] for Attempted First-Degree Murder, Aggravated Malicious Wounding, and Abduction based on Carey's March 14, 2011 written statement that did not contain facts – real or fabricated – that would support the issuance of such warrants." (*Id.*) Willis further states that Lt. Blevins "knew that the theory of the crime implicating Willis was not supported by the evidence and was not plausible." (*Id.*) Apparently relying on these allegedly fraudulently obtained warrants, officers of the Fredericksburg Police Department arrested Willis on March 15, 2011, and he remained in custody until posting bond in February 2012. (*Id.* at ¶¶ 60–89.)

Lt. Blevins contends that he had probable cause to seek the arrest warrants. In the alternative, he argues that even if he lacked probable cause, his actions were objectively reasonable. In either case, he concludes that he is entitled to qualified immunity.

4

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citation omitted). The determination of whether a right is clearly established hinges on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). So long as qualified immunity does not turn on disputed facts, "whether the officer's actions were reasonable is a question of pure law." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Tobey v. Jones*, 706 F.3d 379, 393-94 (4th Cir. 2013) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)). As is the case here, however, qualified immunity is peculiarly well-suited for resolution at the summary judgment stage. *See Willingham v. Crooke*, 412 F.3d 553, 558-59 (4th Cir. 2005); *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (citation omitted).

Neither party disputes that an arrest without probable cause violates the Fourth Amendment. Rather, they disagree as to whether there was probable cause for the arrest or at least sufficient indicia of probable cause to render Lt. Blevins's belief in its

5

existence objectively reasonable. "To address [Willis's] § 1983 claim, [the Court] need

not formally resolve . . . whether [he was] arrested without probable cause." *Torchinsky*,

942 F.2d at 260. The Court "need only determine whether [Lt. Blevins] . . . acted with

the objective reasonableness necessary to entitle him to qualified immunity." *Id* (citation

omitted).

At the Rule 12(b)(6) stage, the Court must construe the allegations in the

plaintiff's favor, giving him the benefit of all reasonable inferences. *T.G. Slater*, 385

F.3d at 841 (citation omitted). On the limited facts presented in his Complaint,[2] Willis

has minimally, but sufficiently, alleged that Lt. Blevins lacked probable cause or

alternatively presented false testimony in seeking the warrants. Furthermore, the sparse

record lacks sufficient details to ascertain whether Lt. Blevins's actions were objectively

reasonable. Because the Court is bound to construe the allegations in Willis's favor, it

must deny qualified immunity, at least at this stage.

Lt. Blevins begins his argument with a recitation of the protection afforded to

officers acting under a facially valid warrant. *See, e.g., Porterfield v. Lott*, 156 F.3d 563,

568 (4th Cir. 1998) (holding officers "could not have committed a tort of false arrest in

violation of the Fourth Amendment because they were acting pursuant to a facially valid

arrest warrant"). He acknowledges that "the valid warrant 'shield' may not always apply

to an officer who also provides the information on which the magistrate's determination

of probable cause is based." (Mem. Sup. Mot. Dismiss 5). However, as Lt. Blevins

---

[2] The Complaint is devoid of any explanation of the specific information presented to the
magistrate in support of the arrest warrants.

correctly argues, qualified immunity is available under *Malley v. Briggs*, 475 U.S. 335, 341 (1986), when a reasonable officer could have concluded that the warrant should issue. Lt. Blevins contends that when applied to the facts at hand, this legal framework requires that the claim be barred by qualified immunity.

While Lt. Blevins may ultimately be entitled to the protection of qualified immunity, the current record before the Court—limited to the allegations in the Complaint—lacks sufficient detail to determine whether probable cause existed or whether it was reasonable to believe that probable cause existed. Paragraphs 56 through 59 of the Complaint provide the factual allegations supporting the false arrest claim. Willis asserts that on March 14, 2011, Lt. Blevins interviewed Carey, prepared a police report, and collected a written statement about the events of March 8, 2011. (Compl. ¶ 56.) However, his Complaint fails to specify what was revealed during the interview or recorded in Lt. Blevins's report. Willis adds that Carey's statement contained "an inherently incredible series of incidents that did not occur" and "did not describe any truthful or fabricated events . . . that would amount to probable cause to arrest and charge [him] with Attempted First-Degree Murder or Aggravated Malicious Wounding." (*Id.* at ¶ 57.) The Complaint further asserts that before seeking the warrants for Willis's arrest, Lt. Blevins "collected no physical or medical evidence supporting" Carey's accusations, "conducted no examination" of the alleged crime scene, and "interviewed no secondary witnesses." (*Id.* at ¶ 58.) Lastly, Willis alleges that on March 11, 2011, two of Carey's children gave statements to Lt. Blevins contradicting her account of the events, (*Id.* at ¶ 59), though he offers no further details concerning the content of their statements.

7

Lt. Blevins begins his argument by highlighting some significant deficiencies in the Complaint. For instance, Willis fails to allege "that the arrest was made without a validly issued warrant." (Mem. Sup. Mot. Dismiss 6.) As well, the Complaint contains only a general allegation that Lt. Blevins used Carey's "false allegations as well as [his] own material omissions, misrepresentations, and fabrications to unlawfully obtain arrest warrants without probable cause . . . ." (Compl. ¶ 3.) And, Willis asserts no supporting facts to show that Lt. Blevins lacked probable cause.

Due to the barebones nature of the Complaint, the Court cannot reach the same conclusion as Lt. Blevins. As noted above, the Court must accept Willis's well-pleaded allegations as true and view the Complaint in the light most favorable to him. *T.G. Slater*, 385 F.3d at 841. Here, Willis has alleged that Carey's statements failed to establish probable cause for the arrest. Lt Blevins argues that he had probable cause or at a reasonable belief that probable cause existed, asserting that "it is clear from the Complaint that, truthful or untruthful, Carey . . . gave [him] a written statement indicating [Willis] committed offenses against her." (Mem. Sup. Mot. Dismiss 7.) But Willis has not supplied the details of these statements, and the Court is not permitted to draw inferences in favor of Lt. Blevins. Further review must await a more fulsome record.

Knowing neither the content of the statements on which Lt. Blevins relied nor the grounds on which the magistrate found probable cause, the Court cannot conclude that Willis's claim that Lt. Blevins lacked probable cause to have him arrested is implausible. Similarly, the record lacks sufficient details to determine whether it was reasonable for Lt. Blevins to believe that Carey's statements constituted probable cause. Based on the

8

current record, to grant Lt. Blevins qualified immunity, the Court would have to construe

the allegations unfavorably to Willis and draw inferences against him—precisely the

opposite of what *T.G. Slater* commands.  Thus, the Court must deny the assertion of

qualified immunity at this time.

### B. Malicious Prosecution

Willis's Second Cause of Action asserts a malicious prosecution claim under §

1983.  This claim is premised on Lt. Blevins's "pursuit of warrants for Attempted First-

Degree Murder, Aggravated Malicious Wounding, and Abduction" against Willis.

(Compl. ¶ 100.)  Willis alleges:

> In his pursuit to bring charges against an innocent man, Lt. Blevins
> disregarded wildly contradictory and exculpatory statements from the
> Groendal family members; coerced witnesses to change and embellish their
> statements; ignored overwhelming evidence of Willis's innocence and the
> Groendal family's motive to falsely accuse him of crimes that never
> occurred; testified falsely; and fabricated evidence to maliciously initiate
> and sustain without probable cause a prosecution against Willis . . . .

(*Id.* at ¶ 101.)  Lt. Blevins advances two arguments for dismissal.  He first asserts that the

arrest was supported by probable cause, precluding a claim of malicious prosecution.

This argument is unavailing, however, for the same reasons stated above in Section III.A.

Alternatively, Lt. Blevins contends that the claim must fail because Assistant

Commonwealth's Attorney O'Shea broke the chain of causation between any alleged

misconduct by Lt. Blevins and Willis's unlawful seizure.  *See Evans*, 703 F.3d at 650.

The Court's analysis will focus on the causation argument.

To state a claim for malicious prosecution under § 1983, "a plaintiff must allege

that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process

unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* at 647 (citation omitted). At issue in the immediate case is the element of causation. Like common law torts, constitutional torts "require a demonstration of both but-for and proximate causation." *Id.* (citation omitted). Thus, "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.* (citation omitted). "Such intervening acts of other participants in the criminal justice system insulate a police officer from liability." *Id.* (citations and internal quotation marks omitted). "[E]ven when . . . a prosecutor retains all discretion to seek an indictment, police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances." *Id.* "In particular, officers may be liable when they have lied to or misled the prosecutor . . .; failed to disclose exculpatory evidence to the prosecutor . . .; or unduly pressured the prosecutor to seek the indictment . . . ." *Id.* at 647–48 (citations omitted). In short, an officer "is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that [the officer] misled or pressured the prosecution." *Id.* at 648 (citations and internal quotation marks omitted).

Willis maintains that "Lt. Blevins worked to deceive all parties involved in . . . Willis's criminal proceedings in an attempt to avoid liability for falsely arresting [him]." (Mem. Opp. Mot. Dismiss 14.) To support his claim of deception, Willis makes several allegations concerning the information Lt. Blevins learned during the initial post-arrest interview with him on March 15, 2011: (1) he offered Lt. Blevins extensive exculpatory

evidence, including emails and text messages from Carey and the names of alibi witnesses, (Compl. ¶¶ 62–64); (2) he informed Lt. Blevins that he had spoken with Chief Blevins about the events of March 8, 2011 and of his concern that Carey might retaliate, (*Id.* at ¶ 65); and (3) he identified a prior false accusation by Carey's estranged husband, Todd Groendal ("Todd"), that Willis had abducted her, (*Id.* at ¶ 66). Willis argues that Lt. Blevins withheld this information from the Westmoreland Commonwealth's Attorney's Office to deceive them and to ensure the prosecution proceeded. Although the Complaint contains no allegations to this effect, it can be reasonably inferred from his actions, as described by Willis, that Lt. Blevins sought to mislead the prosecutors.

Willis further contends that "Lt. Blevins deceived all parties involved in [his] criminal prosecution with the false claim of discovering 'invisible' damage at the alleged crime scene, the fabricated forensic photography technique, and the fabricated photographic evidence Lt. Blevins created on March 16, 2011." (Mem. Opp. Mot. Dismiss 15.) According to the Complaint, after examining the bathroom where the alleged crime occurred, Lt. Blevins reported "that he found structural damage to the . . . drywall that was 'invisible to the naked eye' and could only be seen under 'forensic blue light.'" (Compl. ¶ 69.) He allegedly claimed that he had photographed the wall using this technology and that the photographs showed this damage. (*Id.*) Lt. Blevins reportedly cited this finding during his testimony at the May 4, 2011 preliminary hearing and at trial. (*Id.* at ¶¶ 79, 90.) In his Opposition Brief, Willis adds that "Lt. Blevins apparently was unaware when he 'found' the 'invisible' damage through 'forensic blue light' that such a forensic process . . . did not exist and could not have been used in 2011 .

11

. . ." (Mem. Opp. Mot. Dismiss 15.) However, the Complaint makes no reference to the validity of the forensic method used. As this material is neither incorporated in the Complaint nor integral to it, the Court will not consider the validity of the science at this time. *See Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Complaint itself contains no allegations specifically charging that Lt. Blevins intentionally misled the Commonwealth's Attorney's Office about the photographs. In fact, the Complaint contains a potentially contradictory assertion that Assistant Commonwealth's Attorney O'Shea conspired with Lt. Blevins to fabricate the photographs. (*See* Compl. ¶¶ 117, 118.C.) Again, the intent to deceive can be reasonably inferred from the alleged act of fabrication.

Lt. Blevins counters that O'Shea's independent, intervening actions caused any unlawful seizure after Willis's initial arrest. (Mem. Sup. Mot. Dismiss 10.) Again, he points to the deficiencies of the Complaint. Specifically, Willis has "not alleged that [Lt. Blevins] lied to O'Shea, failed to disclose any exculpatory evidence to him or unduly pressured him into pursuing the indictments against plaintiff." (*Id.* at 11.)

In addition to the absence of these allegations, Lt. Blevins focuses on several allegations suggesting that O'Shea was not influenced by Lt. Blevins, but instead, independently charted the course of the prosecution. First, Lt. Blevins focuses on O'Shea's presentation of Lt. Blevins and Carey's testimony. According to the Complaint, O'Shea "carefully constructed" a "leading line of questioning" for Lt. Blevins, who testified at the May 4, 2011 preliminary hearing that Carey's injuries

12

appeared to be ligature marks, that her children's stories had confirmed her accusations, and that he had found structural damage in the bathroom where the purported crime occurred. (Compl. ¶ 79.)  Similarly, O'Shea reportedly "carefully crafted and guided" Carey's testimony at the preliminary hearing. (*Id.* at ¶ 80.)

Second, Lt. Blevins emphasizes O'Shea's ongoing access to and awareness of the purported exculpatory evidence. On July 29, 2011, the day immediately following his indictment, Willis retained Michael Donner ("Donner") to serve as defense counsel. (*Id.* at ¶¶ 82, 87.)  At that time, Donner reportedly "provided O'Shea with copies of the numerous exculpatory emails and text messages Willis had received from Carey and Todd . . . between March 10-15, 2011." (*Id.* at ¶ 82.)  According to Willis, O'Shea informed "Donner that the exculpatory emails and text messages were part of Willis's plan to create an alibi after his assault against Carey." (*Id.* at ¶ 83.)  Moreover, between November 2011 and February 2012, O'Shea repeatedly ignored several pieces of exculpatory evidence obtained from intercepts of Willis's prison mail. (*Id.* at ¶¶ 85–86.)  Thus, Lt. Blevins argues, regardless of any failure to disclose exculpatory evidence on his part, O'Shea had knowledge of such evidence and independently elected to pursue the charges against Willis.

Third, Lt. Blevins highlights two instances in the Complaint of alleged collaboration between him and O'Shea. At some point between March 30, 2011 and May 4, 2011, they reportedly agreed to characterize Carey's self-inflicted injuries as ligature marks. (*Id.* at ¶¶ 73, 118.B.)  Furthermore, the pair allegedly conspired to create fabricated photos of the crime scene. (*Id.* at ¶ 118.C.)  Based on these independent acts,

13

the apparent collaboration, and the lack of direct allegations that Lt. Blevins misled or

pressured O'Shea into pursuing Willis's indictment and subsequent prosecution, Lt.

Blevins argues that O'Shea's prosecutorial decision broke the causal chain.

The Court is obligated to construe the allegations in the light most favorable to

Willis. Willis has neither alleged in the Complaint nor argued in his Opposition Brief

that Lt. Blevins pressured the prosecution in this case. Furthermore, his Complaint does

not specifically assert that Lt. Blevins misled the prosecutors. Rather, Willis contends in

his Opposition Brief that Lt. Blevins misled the prosecutors by withholding exculpatory

evidence and fabricating evidence. While the allegations in the Complaint provide

minimal detail, it can be reasonably inferred from them that Lt. Blevins sought to mislead

the prosecutors to advance the case against Willis. Even though O'Shea may have

become aware of certain exculpatory information after Willis's indictment, Lt. Blevins

allegedly failed to disclose any of this material prior to the indictment. Thus, Lt. Blevins

arguably withheld exculpatory information that enabled Willis's indictment—conduct for

which he may still be liable under *Evans*. Similarly, it can be reasonably inferred from

the alleged fabrication of the crime scene photographs that Lt. Blevins intended to

mislead the prosecution.[3] Accordingly, the Motion to Dismiss will be denied with

respect to Willis's Second Cause of Action.

---

[3] As noted above, the claim that Lt. Blevins and O'Shea conspired to fabricate these photographs may be inconsistent with the claim that Lt. Blevins intended to mislead O'Shea. Under Federal Rule of Civil Procedure 8(d), Willis is entitled to argue inconsistent claims. However, at the summary judgment stage, it appears that the facts, whatever they may be, may only support one of these competing claims.

### C. Fabrication of Evidence

Willis's Third Cause of Action asserts a § 1983 claim against Lt. Blevins for fabrication of evidence. On March 16, 2011, Lt. Blevins reportedly examined the bathroom where the alleged crime occurred. (Compl. ¶ 69.) He allegedly claimed that he found damage to the wall that was only visible under "forensic blue light" and that he photographed this damage using that same "forensic blue light" technique. (*Id.*) These photographs, according to Willis, "were contradicted by [his] family's accurate photographs showing an undamaged master bathroom wall and by an independent, third-party move-out inspection performed by . . . the townhouse management agency." (*Id.* at ¶ 110.) On the basis of these allegations, the Complaint charges that "Lt. Blevins fabricated false and misleading photographs that he knew would be presented as accurate depictions of the master bathroom wall . . . and . . . would be used in the criminal proceedings against Willis."[4] (*Id.* at ¶ 109.)

The Fourth Circuit has recognized that the fabrication of evidence by an officer "acting in an investigating capacity" constitutes a violation the Fourth Amendment. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). "Demonstration of a violation of [this] constitutional right requires . . . proof that [the officer] fabricated evidence and that the fabrication resulted in a deprivation of [the plaintiff]'s liberty." *Id.*

---

[4] In his Opposition Brief, Willis introduces additional claims about the merits of the methodology allegedly employed by Lt. Blevins in examining the wall for damage. (*See* Mem. Opp. Mot. Dismiss 18.) For the same reasons articulated in Section III.B., the Court will not consider this extraneous material in determining whether the Complaint states a claim for relief.

Lt. Blevins argues that Willis has made a conclusory accusation of fabrication unsupported by any factual allegations, thus failing to plead sufficient facts to establish the first element of such a claim. However, Lt. Blevins does not contest Willis's ability to show a deprivation of liberty resulting from the alleged fabrication. Accordingly, the Court's analysis will focus solely on the sufficiency of the allegations of fabrication.

Although Willis has not supplied many details to support the claim of fabrication, his allegations, coupled with reasonable inferences drawn in his favor, are sufficient to survive Rule 12(b)(6) scrutiny. To begin, Willis's repeated assertions that Lt. Blevins fabricated photographs of the alleged crime scene, (*see* Compl. ¶¶ 3, 109, 110, 118.C.), are not legal conclusions, but rather are factual conclusions. And, although these allegations are lacking in detail, they are not a mere recitation of the elements of a claim.

Moreover, other factual allegations in the Complaint add texture to the claim of fabrication. First, Willis maintains that Lt. Blevins "claimed that he found structural damage to the master bathroom drywall that was 'invisible to the naked eye' and could only be seen under special 'forensic blue light.'" (*Id.* at ¶ 69.) He adds that "Lt. Blevins claimed that he photographed [the] wall under 'forensic blue light' that appears to show imperfections" in the wall at the alleged crime scene. (*Id.*) Thus, Willis has directly implicated Lt. Blevins in the processing and photographing of the crime scene.

Second, Willis contends that the photographs taken by his family and the move-out inspection report contradicted the purportedly fabricated photographs. (*Id.* at ¶ 110.) Conflicting images and accounts present a factual issue to be decided with the benefit of

16

a more complete record. However, at this stage, such discrepancies arguably support a plausible claim that Lt. Blevins fabricated the photographic evidence.

Thus, Willis has supplied more than conclusory allegations. When the supporting factual assertions are read in the light most favorable to him, and reasonable inferences are drawn in his favor, the Complaint alleges sufficient facts to survive dismissal.

### D. Conspiracy to Fabricate Evidence

Willis's Fourth Cause of Action is the subject of some confusion. In the Complaint, the header reads "Fourth Cause of Action: Conspiracy to Fabricate Evidence in Violation of 42 U.S.C. 1985(2)." (Compl. 28.) According to Willis, the Complaint "misstates that [his] conspiracy claim arises under 42 U.S.C. § 1985(2), when it in fact arises under 42 U.S.C. § 1983." (Mem. Opp. Mot Dismiss 14 n.15.) His counsel "apologizes for the scrivener's error and asks the Court to construe the claim under 42 U.S.C. § 1983 as it is presented in the complaint's Factual Allegations and Fourth Cause of Action." (*Id.*) Willis does not seek to introduce new allegations in support of this claim. Furthermore, Lt. Blevins has presented arguments for dismissal addressing both constructions of the claim. Accordingly, the Court will construe the Fourth Cause of Action as a § 1983 action.

Alleging a violation of § 1983, Willis contends that O'Shea and Lt. Blevins conspired to: (1) provide Carey with access to Willis's voluntary, recorded interview about the events of March 8, 2011; (2) orchestrate a sham interview with Carey and Todd to solicit fabricated statements; (3) recharacterize Carey's admittedly self-inflicted injuries as ligature marks; (4) fabricate photographs of the bathroom where the alleged

17

events took place; and (5) use the fabricated evidence to mislead the Court during the pretrial hearings and trial. (*Id.* at ¶¶ 118.A.–F.)

Lt. Blevins seeks dismissal of the claim on two grounds. Relying on *Evans*, he contends that he is entitled to qualified immunity because Willis has "made no allegations . . . that [Lt. Blevins] misled O'Shea, withheld exculpatory evidence from him, or unduly pressured him into pursuing the indictment and prosecution of [Willis]." (Mem. Sup. Mot. Dismiss 14.) Alternatively, Lt. Blevins argues, the Complaint contains no allegations establishing that "each member of the alleged conspiracy shared the same conspiratorial objective," as required by *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citation omitted).

Lt. Blevins's reliance on *Evans* is misplaced. As discussed above, *Evans* concerned a malicious prosecution claim, albeit premised on a conspiracy theory. The plaintiffs in *Evans* advanced two arguments in support of the claim. First, they suggested that even though the officers had not misled the prosecutor, the officers were "liable because they 'misrepresented, withheld, or falsified evidence' that ultimately *influenced the grand jury.*" *Evans*, 703 F.3d at 648 (emphasis in original). The Fourth Circuit rejected this contention, concluding that "acts of *either* the prosecutor *or* the grand jury may break the causal chain." *Id.* (emphasis in original). Based on the allegations, the Court determined that the prosecutor had independently elected to present the false evidence to the grand jury and therefore broke the causal chain. *Id.*

Second, the plaintiffs "maintain[ed] that [the officers] conspired with [the prosecutor] to fabricate and conceal evidence from the grand jury and thus somehow

unduly pressured [him] to seek the indictment." *Id*. The Court observed that "[t]he allegations in their complaint significantly undercut this argument." *Id*. Furthermore, "it seems contrary to the very purpose of qualified immunity," the Court reasoned, "to extend personal liability to police officers who have assertedly conspired with, but neither misled nor unduly pressured, an independent prosecutor." *Id*. Finding this alternative argument unpersuasive, the Court concluded "that an alleged officer-prosecutor conspiracy does not alter the rule that a prosecutor's independent decision to seek an indictment breaks the causal chain unless the officer has misled or unduly pressured the prosecutor." *Id*. at 649.

Lt. Blevins attempts to extend the Fourth Circuit's holding with respect to the second argument beyond its original parameters. He urges that "[w]hile the plaintiffs in *Evans* did not assert a conspiracy claim, the Fourth Circuit clearly addressed the viability of such a claim, in conjunction with a malicious prosecution claim and the defense of qualified immunity." (Mem. Sup. Mot. Dismiss 14 n.7.) Such an extension of the holding in *Evans* is unwarranted.

*Evans* concerned a malicious prosecution claim premised on the theory that the officers conspired with the prosecutor to present fabricated evidence to and conceal exculpatory evidence from the grand jury. Although the plaintiffs argued that this created undue pressure on the prosecutor, the Court rejected that notion. In the immediate case, the claim at issue is conspiracy to fabricate evidence, a constitutional violation distinct from malicious prosecution. *See Wilmore*, 407 F.3d at 282. While the end result of the two violations may be the same—a deprivation of liberty—the actions bringing about the

19

result differ. Malicious prosecution involves the pursuit of charges against an individual

without probable cause. Officers can only be liable for malicious prosecution when there

is no intervening action—by either a prosecutor or a grand jury—or when they have

misled or unduly pressured the prosecutor. Unless the prosecutor has been deceived or

pressured, his decision to proceed breaks the chain of causation, absolving the officers of

liability. Fabrication of evidence concerns investigative misconduct, and there is no

comparable limitation on liability where an independent actor intervenes. Thus, the

holding in *Evans* is not applicable to the present claim, and the argument is unpersuasive.

In the alternative, Lt. Blevins argues that Willis has failed to allege sufficient facts

to state a claim for conspiracy to fabricate evidence. "To establish a civil conspiracy

under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in

concert and that some overt act was done in furtherance of the conspiracy which resulted

in [the] deprivation of a constitutional right . . . ." *Hinkle*, 81 F.3d at 421 (citation

omitted). The Court added in *Hinkle* that where direct evidence of a meeting of the

minds is lacking, the plaintiff "must come forward with specific circumstantial evidence

that each member . . . shared the same conspiratorial objective." *Id.* Lt. Blevins argues

that Willis's allegations fail to show that the members of the purported conspiracy

harbored a common objective. (Reply Mem. Sup. Mot. Dismiss 12.)

The Complaint is rich in conclusions but lean in supporting facts. However, the

matter is presently before the Court on a motion to dismiss, not a motion for summary

judgment. At this stage, Willis need not assert "detailed factual allegations," though the

"allegations must be enough to raise a right to relief above the speculative level."

20

*Twombly*, 550 U.S. at 555 (citations omitted). Furthermore, the Court must accept his well-pleaded allegations as true and view the Complaint in the light most favorable to him. *T.G. Slater*, 385 F.3d at 841.

In support of his claim against O'Shea and Lt. Blevins, Willis recounts several alleged overt acts in furtherance of the conspiracy, namely that they: (1) orchestrated a sham interview to solicit fabricated statements from Carey and Todd; (2) agreed to characterize Carey's allegedly self-inflicted injuries as ligature marks; (3) fabricated photographs of the supposed crime scene; and (4) used that evidence to mislead the Court during the pretrial hearings and trial.[5] (*Id.* at ¶¶ 118.A.–F.) Paragraph 72 of the Complaint provides some additional factual foundation:

> On March 30, 2011, . . . O'Shea and Lt. Blevins continued their sham investigation of the events of March 8, 2011, through a[n] . . . interview with Carey and Todd []. During the . . . interview orchestrated by O'Shea and Lt. Blevins, Carey dramatically modified her story and embellished her written statement with more inherently incredible claims as she "remembered" and described additional fabricated events that did not occur the evening of March 8, 2011. O'Shea and Lt. Blevins later used the fabricated events that Carey described in the . . . interview to bootstrap support for the false charges against Willis at his Preliminary Hearing on May 4, 2011.

(*Id.* at ¶ 72.) The Complaint further states:

> During the . . . interview, O'Shea and Lt. Blevins also discussed at length Carey's self-inflicted wounds with Carey. Under O'Shea's supervision, Lt. Blevins repeatedly clarified with Carey that her wounds were all self-

---

[5] Willis contends that "[i]n over twenty paragraphs and subparagraphs . . . , [he has] identifie[d] specific acts committed solely by Lt. Blevins, and jointly and in concert by Lt. Blevins and Mr. O'Shea, to create probable cause for the false arrest and malicious prosecution they perpetrated against [him]." (Mem. Opp. Mot. Dismiss 20 (citing Compl. ¶¶ 56–69, 72–73, 118.A.–F.).) However, the vast majority of these paragraphs describe actions taken by Lt. Blevins with no reference to O'Shea. Only paragraphs 72–73 and 118.A.–F. implicate O'Shea.

inflicted but appeared to be "ligature marks." Carey repeatedly acknowledged that her wounds were self-inflicted, and Lt. Blevins stated again that they could appear to be ligature marks but that he was fully aware that they were self-inflicted wounds. O'Shea and Lt. Blevins used their belief that the self-inflicted injuries could appear to be ligature marks to mislead the Court at Willis's preliminary hearing on May 4, 2011, during which O'Shea solicited false testimony from Lt. Blevins that Carey's injuries were, in fact, ligature marks inflicted by Willis.

(*Id.* at ¶ 73.)

When read with the claims in paragraphs 118.A.–F. and in the light most favorable to Willis, the allegations in paragraphs 72 and 73 give rise to a plausible inference that O'Shea and Lt. Blevins either explicitly or implicitly agreed to fabricate evidence and undertook several overt acts in furtherance of the conspiracy. For example, they allegedly "agreed to characterize Carey's self-inflicted injuries as 'ligature marks'" and intentionally misled the Court at Willis's preliminary hearing on May 4, 2011, when "O'Shea solicited false testimony from Lt. Blevins that Carey's injuries were, in fact, ligature marks inflicted by Willis." (*Id.* at ¶¶ 73, 118.B.) Not only do these allegations suffice with respect to the overt act requirement, but they also satisfy the requirement that the conspirators acted "jointly in concert." *Hinkle*, 81 F.3d at 421. Finally, Willis's arrest and pretrial detention constitute a deprivation of liberty. Thus, Willis has made sufficient factual allegations to state a claim for relief.

### E. Failure to Train, Supervise, or Control (Chief Blevins)

Asserting a claim under § 1983, Willis's Seventh Cause of Action alleges that Chief Blevins failed to train, control, and supervise Lt. Blevins. Chief Blevins reportedly failed to train Lt. Blevins in:

proper investigative procedure; proper witness, victim, and suspect interview procedure; proper crime scene preservation and analysis; proper use of forensic analysis techniques such as use of alternate light sources and photography of trace evidence; and basic constitutional rights afforded to suspects and defendants.

(*Id.* at ¶ 146.) He further charges that:

Chief Blevins failed to supervise Lt. Blevins'[s] investigation of the serious allegations against Willis or communicate to Lt. Blevins Willis's contact with Colonial Beach Police Department three days before Lt. Blevins began his investigation.

(*Id.* at ¶ 147.) Lastly, he asserts that "Chief Blevins failed to control and discipline Lt. Blevins for misconduct and incompetence," adding that "Chief Blevins promoted Lt. Blevins after a teenager stole an automatic rifle and ammunition . . . entrusted to Lt. Blevins." (*Id.* at ¶ 148.)

There are three elements necessary to establish supervisory liability under § 1983:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted). Chief Blevins argues that Willis "has simply set forth a number of conclusory allegations" and has failed to allege sufficient facts establishing any of these three elements. (Mem. Sup. Mot. Dismiss 17–19.) This Court agrees that Willis has failed to allege sufficient facts to survive Rule 12(b)(6) scrutiny.

To satisfy the knowledge requirement, the plaintiff must allege facts showing "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799 (citation omitted). Furthermore, a "pervasive and unreasonable risk of harm" is only satisfied when "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citation omitted). The claims in *Shaw* arose from the shooting of a man stopped on suspicion of driving while impaired. *Id.* at 794. After reviewing the facts, the Fourth Circuit found that the supervising officer "had knowledge of at least three incidents in which [the subordinate officer] used excessive force which posed an unreasonable risk of harm to arrestees." *Id.* at 800.

Willis's allegations fall far short of those facts underpinning the Fourth Circuit's finding of knowledge in *Shaw*. Aside from Lt. Blevins's alleged misconduct in handling the investigation of Willis, the Complaint references only one prior act by Lt. Blevins of which Chief Blevins was or should have been aware—the purported theft of an automatic rifle and ammunition entrusted to Lt. Blevins.[6] (Compl. ¶ 148.) The Complaint provides no indication of Lt. Blevins's involvement, if any, in the theft.

---

[6] In his Opposition Brief, Willis introduces additional allegations premised on an exhibit attached to the brief—"Assessment of the Colonial Beach Police Department" by Gary W. Reynolds, Ph.D ("Reynolds' Report") (ECF No. 20-2). In short, Willis alleges that Dr. Reynolds conducted a review of the Colonial Beach Police Department's policies and procedures in 2007. Dr. Reynolds observed a number of weaknesses in the training offered to officers and concluded that the department lacked sufficient resources and leadership commitment to provide proper training. (Mem. Opp. Mot. Dismiss 23–25.)

The Reynolds' Report was neither referenced in nor attached to the Complaint. Moreover, these supplemental allegations are not integral to the Complaint and the claims

Willis also cites a list of acts by other officers, but these are not material as the inquiry under *Shaw* concerns only the conduct of Lt. Blevins. The lone allegation concerning the automatic rifle is insufficient to satisfy the knowledge requirement. If the loss of the weapon can even be characterized as misconduct, it is not the sort misconduct with which § 1983 is concerned. Unlike the use of excessive force at issue in *Shaw*, the theft of a firearm entrusted to an officer plainly does not "pose[] a pervasive and unreasonable risk of constitutional injury." 13 F.3d at 799. Thus, Willis has failed to establish the first element under *Shaw*.

Willis's Complaint also fails to allege facts showing deliberate indifference on the part of Chief Blevins. *Shaw* provides that "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." 13 F.3d at 799 (citation and internal quotation marks omitted). Showing deliberate indifference is particularly challenging because:

> ordinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

---

asserted. Accordingly, the Court will not consider the Reynolds' Report in ruling on the Motion to Dismiss. *See Braun*, 652 F.3d at 559 n.1; *Trimble Navigation*, 484 F.3d at 705. Even were the report properly before the Court for consideration, the decision would be the same. The report contains no specific allegations of misconduct on the part of Lt. Blevins, and thus, it offers no support for the claim that Chief Blevins had knowledge of any misconduct by Lt. Blevins.

*Id.* (citation omitted) (alteration in original).  Here, there are no allegations of widespread abuse.  Willis cites one alleged incident in which two officers fabricated documents. (Compl. ¶ 157.D.)  However, as relayed in the Complaint, this alleged misconduct appears to be an isolated incident, and it occurred in the context of an investigation of those two officers.  Furthermore, Willis does not implicate Lt. Blevins in this claimed fabrication.  Accordingly, the Complaint lacks sufficient factual allegations to satisfy the second element of a § 1983 action for failure to train, supervise, or control.

Finally, Willis has failed to articulate any facts establishing a causal link between the alleged inaction of Chief Blevins and the specific constitutional injury suffered by Willis.  Causation is met by a demonstration of "an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (citation and internal quotation marks omitted).  "The proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Id.* (citation and internal quotation marks omitted).  In the immediate case, nothing suggests that Chief Blevins instructed or otherwise caused Lt. Blevins to take any action against Willis.  Moreover, the Complaint attributes no prior, relevant misconduct to Lt. Blevins, and there are no allegations suggesting that Chief Blevins knew or had reason to know that Lt. Blevins would violate a citizen's rights in the manner alleged by Willis.  Thus, the Complaint supports neither the conclusion that Chief Blevins's actions caused the purported violation nor the finding that Lt. Blevins's misconduct was the natural and probable cause of his inaction.

26

The claim against Chief Blevins is rich in conclusions but devoid of supporting

facts. The allegations are insufficient to establish any of the three elements identified in

*Shaw*. Therefore, the Court will dismiss the Seventh Cause of Action without prejudice.

**F. Failure to Train, Supervise, or Control (Colonial Beach)**

Willis's Eighth Cause of Action asserts a § 1983 claim against Colonial Beach

"under the *Monell* Doctrine for its policy, custom, and/or practice of failing to train

supervise, and control members of its Police Department, which led to the violation of

Willis's Fourth and Fourteenth Amendment rights." (Compl. ¶ 156.) He contends that

the Colonial Beach Police Department "has a long and well-documented public history of

criminal acts committed by officers; civil and criminal prosecutions against officers for

constitutional violations; evidence fabrication by officers; ineffective and indifferent

leadership and management; ineffective or nonexistent training standards; ineffective or

nonexistent officer supervision; and ineffective or nonexistent disciplinary procedures for

its officers." (*Id.* at ¶ 157.) To illustrate the inadequacy of the training, supervision, and

control of the police force, Willis lists several incidents of misconduct by individual

officers. The alleged misconduct includes sexual abuse of a minor, excessive force,

reckless driving, assault, and driving while intoxicated. (*Id.* at ¶¶ 157.A.–S.) Willis also

notes the seemingly high rate of turnover in leadership, with three Chiefs leaving office

in a six year span. (*Id.*) Willis further supports his claim with references to formal and

informal criticism allegedly made by town officials, current officers, and independent

reviewers.[7] (*Id.*) Finally, Willis contends that the town has been grossly negligent in the training and supervision of Lt. Blevins. (*Id.* at ¶ 159.) He concludes that Colonial Beach's "actions and inactions evidenced a reckless and callous disregard, and deliberate indifference to, [his] constitutional rights." (*Id.* at ¶ 161.)

Colonial Beach contends that Willis's Eighth Cause of Action is lacking sufficient supporting factual allegations to survive Rule 12(b)(6) review. Colonial Beach asserts that despite the range of accusations in the Complaint, the facts as alleged do not establish municipal liability for failure to train under § 1983. The Court agrees that Willis has failed to allege sufficient facts to state a claim for relief.[8]

Pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the government is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens'

---

[7] Willis seeks to supplement the allegations in the Complaint with additional allegations from the Reynolds' Report. As noted above, the report was neither referenced in nor attached to the Complaint, and these supplemental allegations are not integral to the Complaint. Thus, the Court will not consider the Reynolds' Report in ruling on the Motion to Dismiss. *See Braun*, 652 F.3d at 559 n.1; *Trimble Navigation*, 484 F.3d at 705.
   Even if the Court were to consider the information in the report, the decision would be the same. The report lacks allegations suggesting that officers, specifically Lt. Blevins, received inadequate training in the area of Fourth Amendment protections or that they were instructed to fabricate evidence against suspects. Therefore, the Reynolds' Report offers no support for the claim that Colonial Beach failed to train, control, or supervise Lt. Blevins.
[8] The allegations in Willis's Complaint suggest his claim is premised on the theory that Colonial Beach failed to provide adequate training to its police officers, and not a specific custom or policy of violating citizens' Fourth Amendment rights. Furthermore, his Opposition Brief focuses exclusively on the failure to train argument. Given that Willis has declined to address these alternative theories, which appear to be meritless based on the allegations in the Complaint, the Court will only address the failure to train theory in its analysis.

rights may rise to the level of an official government policy for purposes of § 1983."
*Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). However, "[a] municipality's
culpability for a deprivation of rights is at its most tenuous where a claim turns on a
failure to train." *Id.* (citation omitted).

For inadequate police training to form the basis of municipal liability under
§ 1983, the failure to train must "amount[] to deliberate indifference to the rights of
persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S.
378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring
proof that a municipal actor disregarded a known or obvious consequence of his action."
*Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). "A pattern of
similar constitutional violations by untrained employees is 'ordinarily necessary' to
demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct.
at 1360 (citation omitted). The requirement that a pattern of violations be shown is
premised on the notion that "[w]ithout notice that a course of training is deficient in a
particular respect, decisionmakers can hardly be said to have deliberately chosen a
training program that will cause violations of constitutional rights." *Id.*

*Canton* "left open the possibility that in a narrow range of circumstances, a pattern
of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361
(citations and internal quotation marks omitted). In *Canton*, the Court suggested that a
city's decision to arm its officers with firearms without training the officers in the
constitutional limitations on the use of deadly force could arguably be characterized as
deliberate indifference. 489 U.S. at 390 n.10. "In leaving open . . . the possibility that a

29

plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, [the Court] simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cty.*, 520 U.S. at 409.  The vast majority of cases, however, do not involve issues as complex as the constraints on the use of lethal force, and rarely is the lack of training in an area so likely to result in a violation of a constitutional right.

"In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Canton*, 489 U.S. at 390.  Furthermore, "for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. Accordingly, "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).  And, "municipal liability will attach only for [decisions] having a *specific* deficiency or deficiencies . . . such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Id.* (citation and internal quotation marks omitted).

Willis's Complaint falls short of these requirements.  First, Willis has failed to identify the specific deficiency in Colonial Beach's training program.  Paragraphs 156, 157, 157.I., and 159 contain the only references to Colonial Beach's alleged training

deficiencies, and these paragraphs identify no specific flaws in the training.[9]  *Canton* and

Rule 12(b)(6) demand more.  As noted above, a § 1983 claim premised on failure to train

requires that "the identified deficiency . . . be closely related to the ultimate injury."

*Canton*, 489 U.S. at 391.  Because Willis has failed to allege a specific deficiency in the

training provided to members of Colonial Beach's police force, the Court cannot

determine whether any purported deficiency is closely related to his injury.

Next, even had Willis identified a specific flaw in the training program, his claim

would still not survive 12(b)(6) scrutiny.  The misconduct cited by Willis in the

Complaint does not establish "[a] pattern of similar constitutional violations by untrained

employees" sufficient "to demonstrate deliberate indifference."  *Connick*, 131 S.Ct. at

1360 (citation omitted).  Aside from the pending allegations against Lt. Blevins and Chief

Blevins, the Complaint asserts only one prior constitutional violation attributable to

officers of the Colonial Beach Police Department.  However, Willis neglects to specify

the nature of the violation or the disposition of the claim.  Instead, he states that an officer

---

[9] Willis makes a related allegation that:

> Chief Blevins failed to train his son, Lt. Blevins, in proper investigative
> procedure; proper witness, victim, and suspect interview procedure; proper crime
> scene preservation and analysis; proper use of forensic analysis techniques such
> as use of alternate light sources and photography of trace evidence; and basic
> constitutional rights afforded to suspects and defendants.

(Compl. ¶ 146.)  *Canton* noted, "[t]hat a particular officer may be unsatisfactorily trained will not
alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from
factors other than a faulty training program."  489 U.S. at 390.  This allegation specifically fails
to attribute the training deficiencies of Lt. Blevins to Colonial Beach.  Moreover, as alleged,
these deficiencies only concerned the training provided to Lt. Blevins, not the training offered to
all Colonial Beach police officers.  Thus, this allegation is insufficient to establish any specific
deficiencies in Colonial Beach's training regimen.

and a former Chief "tasered an individual who later filed a § 1983 suit" against the officer, the Chief, and Colonial Beach. (Compl. ¶ 157.B.) Presumably, the alleged constitutional violation was the use of excessive force, a violation not at all similar to the violations alleged in the immediate case. Thus, he has not identified a pattern of similar constitutional violations.

The remaining allegations are likewise insufficient to state a claim. The alleged misconduct includes sexual abuse of a minor, reckless driving, assault, and driving while intoxicated. These acts do not constitute constitutional violations. Accordingly, Willis has failed to allege facts showing deliberate indifference on the part of Colonial Beach.

Lastly, despite Willis's claims to the contrary, the conduct underpinning the alleged violations does not fall within the narrow range of circumstances where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cty.*, 520 U.S. at 409. The alleged violations involve the withholding and fabrication of evidence. Unlike the hypothetical in *Canton*, no amount of training would prevent Lt. Blevins's alleged misconduct. The limits on the use of deadly force are judgmental and involve complex legal analysis. Withholding and fabricating evidence are commonly governed by personal rectitude rather than professionally imparted skill sets. Thus, "the need for more or different training is [not] so obvious, and the inadequacy [not] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

32

In short, Willis has failed to allege sufficient facts to state a claim against Colonial

Beach for failure to train its police officers.  He has not identified any specific deficiency

in training to which his injury can be attributed, as required by *Canton*.  Furthermore, his

allegations do not establish a pattern of similar violations showing deliberate

indifference, and this case does not fall within the narrow range of violations for which

no pattern of previous similar misconduct is required to establish deliberate indifference.

Therefore, the Eighth Cause of Action will be dismissed without prejudice.

## IV.  CONCLUSION

Based on the foregoing analysis, the Motion to Dismiss will be denied in part and

granted in part.  With respect to the four claims against Lt. Blevins, the Motion will be

denied.  Accordingly, Willis will be allowed to proceed with the claims alleging false

arrest, malicious prosecution, fabrication of evidence, and conspiracy to fabricate

evidence.  However, the Motion will be granted with respect to Chief Blevins and

Colonial Beach, and the claims against them will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.


                                          /s/

Date: **Aug. 16 2013**
Richmond, VA

                                  Henry E. Hudson
                                  United States District Judge