IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PETER WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:13CV278–HEH |
| | ) |
| KENNETH BLEVINS, JR., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(Granting Defendant's Motion for Summary Judgment)

This is a civil rights action brought under 42 U.S.C. § 1983 against Kenneth Blevins, Jr. ("Lt. Blevins"), an officer with the Town of Colonial Beach Police Department. The Complaint, as originally filed, contained a broad array of allegations against law enforcement and public officials based in Westmoreland County, Virginia and the Town of Colonial Beach. Other defendants were pruned from the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plead a plausible claim. The case is presently before the Court on Lt. Blevins' Motion for Summary Judgment.[1] Although both parties filed memoranda explaining their position, only the defendant provided supporting exhibits.

---

[1] The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process.

After a careful review of the evidence, as detailed below, the Court is of the opinion that Plaintiff can advance no factual basis to support his contentions and that Lt. Blevins is entitled to either qualified immunity or dismissal on other grounds.

The claims against Lt. Blevins evolve from an incident that occurred on March 8, 2011 between the Plaintiff, Peter Willis ("Willis"), and Carey Groendal ("Groendal"). From the evidence offered in support of summary judgment, it appears that Willis and Groendal, who was separated from her husband, were involved in a tumultuous personal relationship. As a result of a physical altercation that occurred on March 8, 2011, Willis was arrested on March 15, 2011 on a warrant charging attempted first degree murder, aggravated malicious wounding, and abduction of Groendal.[2] The day following the incident, Groendal was taken to Mary Washington Hospital for treatment of head injuries. (Def.'s Mem. Support Mot. Summ. J., Carey Groendal, Blevins Aff. Ex. F at 20:5-17.[3]) The grand jury indicted Willis on all three charges on July 28, 2011.

Willis was incarcerated for 349 days in the Northern Neck Regional Jail before a Westmoreland County Circuit Court jury acquitted him on May 8, 2012. Lt. Blevins conducted the investigation of the underlying incident, acquired a warrant for Willis' arrest and provided extensive testimony at his preliminary hearing and trial. The arrest and charges against Willis were largely based on Groendal's statements about the events

---

[2] Willis does not contest the existence of probable cause for his arrest on the abduction charge. (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 12 n.10.)

[3] Attached to Defendant's Memorandum in Support of Motion for Summary Judgment is Lt. Blevins' affidavit with additional exhibits appended (ECF Nos. 80-1, 80-2). The various exhibits include affidavits and interview transcripts from several individuals, including the victim, her children, and police officers. The Court will cite these documents by the individual's name. Trial transcripts are also included in the appended exhibits and will be cited by document title.

of March 8, 2011, coupled with interviews of her minor children present at the house that day,[4] and examination of physical evidence recovered.

The overarching theme of Willis' complaint is that Lt. Blevins and the Assistant Commonwealth's Attorney for Westmoreland County conspired to fabricate physical evidence and present perjured testimony at his preliminary hearing and trial. Willis contends that Lt. Blevins engaged in numerous acts of misconduct during the investigation and subsequent prosecution. These include failing to conduct a full investigation, obtaining an arrest warrant without probable cause, fabricating evidence, and testifying untruthfully. Willis, however, is unable to marshal any significant evidence to support his serious contentions.

Willis' complaint asserts four 42 U.S.C. § 1983 claims against Lt. Blevins. These include: (1) false arrest; (2) malicious prosecution; (3) fabrication of evidence; and (4) conspiracy to fabricate evidence. Distilled to its essence, Willis accuses Lt. Blevins, acting in concert with the assistant commonwealth's attorney, of committing perjury, not only in presenting evidence at trial, but also in obtaining the initial warrant for his arrest.

The standard for review of summary judgment motions is well established in the Fourth Circuit. Summary judgment is appropriate only if the record shows "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidentiary basis on which such motions are

---

[4] Groendal's children were present in the residence when the incident occurred, but were located downstairs, removed from the events at issue. Although of minimal value, their interviews were generally consistent in material part with Groendal's version. (*See generally* Abigail Groendal, Blevins Aff. Ex. C; Todd Groendal, Blevins Aff. Ex. D.)

3

resolved include pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any. *Id.*[5] As the United States Supreme Court pointed out in *Anderson v. Liberty Lobby, Inc.*, the relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. 242, 251–52 (1986). In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party—here, Willis. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another," the "mere existence of a scintilla of evidence,"

---

[5] In his opposition memorandum, Willis challenges Lt. Blevins' reliance on his own affidavit and the attached authenticated documents and exhibits as evidence. Obviously, sworn affidavits are competent sources of proof under Rule 56(c). The accompanying documents, most of which are properly attested, corroborate Lt. Blevins' statements. It is also interesting to point out that in his memorandum, Willis relies on a number of exhibits to which he also notes his objection.

4

or the appearance of some "metaphysical doubt" concerning a material fact. *Stone v. Liberty*, 105 F.3d 188, 191 (4th Cir. 1997) (citations omitted); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answer to interrogatories, and admissions on file to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324.

A material fact is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to warrant a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

Lt. Blevins approaches his motion for summary judgment on several fronts. First, he points out that the arrest of Willis was premised on a warrant issued by the magistrate based on his recitation of the evidence garnered from Groendal and the alleged crime scene. Moreover, according to Lt. Blevins, he took the additional step of conferring with and receiving authorization from the commonwealth's attorney before obtaining the warrant. Next, he points to the absence of any substantive evidence to support Willis' allegation of fabrication and perjury. Lastly, and perhaps most importantly, Lt. Blevins alleges that he is entitled to qualified immunity.

Qualified immunity "[s]hields [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

To determine whether Willis' claims can survive a qualified immunity-based challenge, the Court will follow the two-step inquiry laid out in *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). This analytical framework requires the court to determine initially whether there has been a constitutional violation, and second, whether the right violated was clearly established. *Id.*; *see also Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010).

As Lt. Blevins notes in his memorandum, a police officer is typically entitled to qualified immunity when a claim for false arrest is based on a facially-valid arrest warrant issued by a magistrate. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). The scope of this immunity is amplified somewhat by the teachings of *Malley v. Briggs*, 475 U.S. 335 (1986). Generally, a law enforcement officer obtaining a warrant from a magistrate prior to arrest is entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 344–45. Equally instructive are the comments of Chief Judge Traxler in *John Doe v. Broderick*:

> "Qualified immunity thus provides a 'safe-harbor' from tort damages for police officers performing *objectively reasonable* actions in furtherance of their duties." This "safe-harbor" ensures that officers will not be liable for "bad guesses in gray areas" but only for "transgressing bright lines." Of course, officers are not afforded protection when they are "plainly incompetent or . . . knowingly violate the law." But, in gray areas, where the law is unsettled or murky, qualified immunity affords protection to an

6

> officer who takes an action that is not clearly forbidden -- even if the action is later deemed wrongful. Simply put, qualified immunity exists to protect those officers who reasonably believe that their actions do not violate federal law.

225 F.3d 440, 453 (4th Cir. 2002) (emphasis in original) (citations omitted).

Willis appears to concede that the only evidence in the record revealing the information that Lt. Blevins presented to the magistrate is contained in his sworn affidavit which accompanied this motion. In his affidavit, Lt. Blevins states:

> I conducted a detailed interview of Mrs. Groendal, during which she described, among other things, Peter Willis restraining her against her will, burning her knuckle with a cigarette, attempting to drown her in a bathtub, and striking her head against the wall at least once. I outlined Mrs. Groendal's statements in my Police Investigative Report [], a true and accurate copy of which is attached as Exhibit A.

(Blevins Aff. ¶ 3.) Additionally, according to Lt. Blevins' affidavit:

> After speaking with Dean Adkins, the Commonwealth's Attorney, on March 15, 2011, I met with Magistrate Laura Brownlee and provided her orally with the factual information from my Report (Exhibit A) relating to Mrs. Groendal's allegations, and with the summary of the information I learned from my interviews with Abigail and Todd Owen Groendal. Magistrate Laura Brownlee, after finding probable cause, issued arrest warrants for Peter Willis for (1) Attempted First Degree Murder; (2) Aggravated Malicious Wounding; and (3) Abduction.

(Blevins Aff. ¶¶ 11-12.)

Because Willis argues that Lt. Blevins should have conducted a more thorough investigation before obtaining a warrant and that he failed to disclose to the magistrate possible discrepancies encountered during his interview of Groendal, Willis contends that no reasonably competent officer would have concluded that a warrant should issue. This logic simply does not follow. The fact that reasonably competent police officers might

7

disagree as to whether probable cause exists, or whether additional investigation is appropriate, does not preclude qualified immunity. *Malley*, 475 U.S. at 341. There is no requirement that a "reasonable officer must exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinski*, 942 F.2d. 257, 264 (4th Cir. 1991).

Moreover, "the truthfulness of a witness statement is irrelevant as to whether affiant's statements were truthful." *Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2012). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citation omitted).[6]

Despite Willis' assertion that the information Lt. Blevins provided to the magistrate was false, there is no evidence in the record to support Willis' claim. In fact, a review of the record reveals the contrary. The information Lt. Blevins provided under oath tracked the results of his investigation. Only two people were present when the alleged crimes occurred—Willis and Groendal. Lt. Blevins reasonably chose to credit Groendal's testimony. He cannot be held legally responsible for the credibility of the complainant, Groendal. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

---

[6] The centerpiece of Willis' lawsuit is the fact that he was acquitted of all charges by a jury. The inquiry, however, is not outcome dispositive. The central focus of a Fourth Amendment claim is "probable cause," a decision statutorily entrusted to a magistrate. The responsibility of the officer is to truthfully present the results of his investigation to the magistrate. The officer reports, the magistrate decides.

Willis has failed to go beyond his pleadings and present specific evidence to establish a genuine issue of material fact. Even taken in the light most favorable to Willis, the factual record fails to show that Lt. Blevins violated a constitutional right. This Court, therefore, finds that Lt. Blevins' actions were both constitutionally sound and objectively reasonable. He is entitled to qualified immunity on Willis' claim of false arrest under 42 U.S.C. § 1983, as contained in Count I of the Complaint.

Turning next to Count II, Willis alleges a violation of 42 U.S.C. § 1983 based on Lt. Blevins' alleged malicious prosecution of him. Although this claim has several elements, the pivotal issue is that Lt. Blevins lacked probable cause for the arrest. As discussed above, Willis offers no supporting facts, only conclusions laced with speculation. Although he reiterates that the warrant for his arrest was predicated on false statements made by Lt. Blevins to the magistrate, he cites no evidence to support this contention. In fact, there is no indication in the record that anyone other than Lt. Blevins and the magistrate were present when the warrant was obtained. Willis alleges in Count II that "[t]he evidence is also clear from Exhibit A of Blevins' affidavit that he did not have probable cause of any kind to pursue these two charges or arrest the plaintiff on these charges." (Pl.'s Mem. Opp'n 11.) This Court disagrees.

The second component of Willis' civil rights claim of malicious prosecution is that Lt. Blevins mislead the commonwealth's attorney in securing his indictment. This accusation again appears to flow from Willis' perception that Lt. Blevins misrepresented and/or mischaracterized his interview with Groendal. This contention trips in the starting gate. In his affidavit, Lt. Blevins not only denies providing false information to the

9

prosecutor, but authenticates Exhibit F to his affidavit as a true and accurate transcript of the March 30, 2011 interview of Groendal. A cursory review of the transcript reveals that the assistant commonwealth's attorney was not only present during the interview, but actually questioned Groendal.

The evidence forecast by Willis to support Count II is no more substantive than that offered in Count I. It is rich in speculation but short on facts. Willis' general denials and accusations, unadorned with specific facts, are insufficient to survive summary judgment challenge.[7]

The remaining claims, Counts III and IV, are closely allied. Count III alleges that Lt. Blevins fabricated evidence; Count IV maintains that Lt. Blevins conspired with the assistant commonwealth's attorney to present the fabricated evidence at the preliminary hearing and at trial. These claims focus on two separate items of evidence—photographs of Groendal's bathroom and the characterization of abrasions on her arm portrayed in photographs presented in court.

Willis contends that Lt. Blevins testified falsely at his preliminary hearing—but not at trial—that the marks on Groendal's wrists were caused by a ligature, rather than self-inflicted. Willis alleges that after Lt. Blevins and the assistant commonwealth's attorney conducted their March 30, 2011 interview of Groendal, the origin of the marks

---

[7] Lt. Blevins also argues that he has no legal responsibility for any prosecutorial or litigation related decisions following the prosecutor's authorization of Willis' arrest. He argues that the subsequent acts of independent decision makers, namely the commonwealth's attorney, constituted an intervening superseding cause breaking the causal chain between his alleged misconduct and Willis' arrest and prosecution. *Evans*, 703 F.3d at 647. Lt. Blevins is correct from a legal perspective, but Willis claims that Lt. Blevins' willful misconduct misled the prosecution.

10

on her wrists should have been clearly evident. A close examination of the record fails to support this contention.

In his initial incident report, Exhibit A to Lt. Blevins' affidavit, he indicated that "[t]he victim stated that the suspect pulled the victim on to the bed in the bedroom and attempted to restrain the victim's wrists with a [sic] black in color cloth restraints. The suspect was able to place the restraint on the victim's left wrist (photographs of ligature marks)." (Blevins Aff. Ex. A, at 2.)

Willis is correct that during the March 30, 2011 interview, Groendal revealed that during the altercation on March 8, 2011 that led to Willis' arrest, Groendal locked herself in the bathroom and while there, cut into her arms with a razor in order to "numb the emotion[]."[8] (Carey Groendal at 4:19-5:7.) Later in the interview, however, Groendal adds "[w]e were fighting. He was trying to tie my hands behind my back with a pair of cuffs and that's when I remember Abigail [her daughter] walking in." (*Id.* at 13.) Lt. Blevins then drew Groendal's attention closely to two marks on her left wrist and asked, "did you [do] that yourself as well?," to which she replied, "No. I did not do that." (Carey Groendal, at 14:10-11.) The photographs of Groendal's wrists displayed to her on March 30, 2011 are authenticated in Lt. Blevins' affidavit and attached as Exhibit B. These photographs were available for the trier of fact at both the preliminary hearing and trial, and essentially speak for themselves. Clearly, from casual observation, it does not

---

[8] When Lt. Blevins searched the scene on March 8, 2011, he did not find an Xacto razor as described by Groendal. (May 8, 2012 Trial Tr., Blevins Aff. Ex. K, at 26:26-27:16.)

11

appear that at least some of the marks on her wrists—the abrasions—could have been caused by a razor blade.

Obviously, Lt. Blevins was not present when the marks at issue were administered to Groendal's wrists. Therefore, his testimony represented his personal opinion based upon his investigative experience and observation of the photographs. Given Groendal's inconsistent statements concerning the origin of her injuries and the appearance of the wounds as depicted in the photographs, this Court can find no basis to conclude that Lt. Blevins knowingly testified falsely in his characterization of the marks.

The second strand of the constitutional claims underlying Counts III and IV involve photographs taken by Lt. Blevins of the master bedroom at the crime scene. The dispute distills to whether Lt. Blevins testified falsely that he detected an indentation on the bathroom wall, arguably corroborating Gronedal's account of the alleged assault.[9] Willis also asserts that Lt. Blevins testified falsely as to the date the photographs were taken. In essence, Willis maintains that Lt. Blevins' authentication of the accuracy of the photographs at his trial was tantamount to perjury. Although Willis steadfastly maintains that "no damage appeared in any of the pictures" (Pl.'s Mem. Opp'n 13), the photos presented at trial to the jury spoke for themselves.

In his affidavit accompanying his motion for summary judgment, Lt. Blevins stated under oath that he returned to the alleged crime scene on March 16, 2011, one day after Willis was arrested for attempted first degree murder, aggravated malicious

---

[9] Groendal advised Lt. Blevins that Willis pushed her twice in the bathroom causing her head to strike the wall. (Carey Groendal at 7:15-24.)

wounding, and abduction. According to his affidavit, he was assisted that day by Detective Robert Eves ("Detective Eves") of the Colonial Beach Police Department. Lt. Blevins stated that "[b]oth Detective Eves and I saw and felt an indentation in the wall of the master bathroom, although it was not very visible in the photographs I took that day." (Blevins Aff. ¶ 14.) Detective Eves confirms this observation in his independent affidavit. "On March 16, 2011, I accompanied Lt. Blevins to the residence at 707 Monroe Point Drive, Colonial Beach, Virginia. . . . Located in the master bathroom was an indentation in the wall, which I observed." (Eves Aff. ¶¶ 5–6 (ECF No. 80-5).)

In order to enhance the visibility of the indentations in the bathroom wall at the crime scene, Lt. Blevins, accompanied by Officer Amy Molinares, returned to that location to take additional photographs. To increase the visibility of the indentations in the wall, Lt. Blevins employed a forensic blue light.

> The light I used was a Spectroline OFK-450A Blue Forensic Light made by Spectronics Corporation. Although the blue light is typically used for the inspection and photographs of bodily fluids, biological stains, fingerprints, and pattern wounds, hairs and fibers, I was able to photograph two indentations present in the master bathroom wall by use of the blue light. . . . Both Officer Molinares and I saw and felt the indentation in the wall of the master bathroom which we photographed with the assistance of the blue light on July 20, 2011.

(Blevins Aff. ¶¶ 24–25.) Officer Molinares corroborates this observation in her affidavit: "[a]fter returning to the townhouse, Lt. Blevins and I went to the master bathroom

13

upstairs. . . . I recall observing an indentation in the wall of the master bathroom at 707 Monroe Point Drive, Colonial Beach." (Molinares Aff. ¶¶ 7, 9 (ECF No. 80-6).)[10]

To support his claim of fabrication and perjury, Willis correctly points out that the photographs taken under blue light lamination were originally date stamped May 10, 2011. Willis argues that contrary to Lt. Blevins' testimony, the townhouse where the incident occurred was not occupied on that date. Furthermore, Willis alleges that a "move-out inspection of the residence occurred on April 10, 2011 and clearly notes there is NO damage to the master bathroom walls." (Pl.'s Mem. Opp'n 14.) Although Willis refers to a specific exhibit (Exhibit 3, Century 21 Battlefield lease executed by Carey Groendal), no such exhibit appears with the pleadings filed by Willis in this case.

With respect to the date on which the enhanced photographs were taken, Lt. Blevins acknowledged his error. After reviewing Colonial Beach Police Department records, he clarified that the date on which the blue light enhanced pictures were taken was actually July 20, 2011. However, irrespective of the exact date, the evidence of record is virtually unrebutted that such photographs were taken and that impressions in the bathroom wall were detected. The inconsistencies highlighted by Willis may be grist for the cross examination mill, but they fall far short of demonstrating a violation of Willis' constitutional rights.

Moreover, Willis proffers no evidence to support his contention that Lt. Blevins and the assistant commonwealth's attorney acted in concert to violate his civil rights.

---

[10] The fact that these photographs were taken of the wall of the master bathroom is further confirmed by the then occupants of the townhouse where the incident occurred. (David Bateman Aff. ¶ 8 (ECF No. 80-3); Jennifer Bateman Aff. ¶ 8 (ECF No. 80-4).)

14

The mere fact that Lt. Blevins and the prosecutor worked together in preparing Willis' case for trial provides no evidentiary foundation for his conclusion that a conspiracy existed. The fact that both shared a common objective of performing their sworn duties hardly fosters an inference of ignobility. As the United States Court of Appeals for the Fourth Circuit pointed out in *Hinkle v. City of Clarksburg, W.Va.*,

> Appellants have a weighty burden to establish a civil rights conspiracy. While they need not produce direct evidence of a meeting of the minds, Appellants must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. In other words, to survive a properly supported summary judgment motion, Appellants' evidence must, at least, reasonably lead to the inference that Appellees positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

81 F.3d 416, 421 (4th Cir. 1996) (citations omitted). Willis simply fails to offer any evidence to reasonably lead to an inference that such a common understanding occurred in this case. Moreover, he presents a disturbingly shallow factual basis for his audacious allegations.

In the final analysis, the Court concludes that Lt. Blevins is entitled to qualified immunity on all constitutional claims alleged by Willis. Willis identifies no substantive evidence to support any claim of a constitutional violation. In fact, the record evidence is insufficient to even spawn a genuine dispute of material fact as to the underlying claims. Under this theory, Lt. Blevins is entitled to judgment as a matter of law.

An appropriate Order will accompany this Memorandum Opinion.

                                                  /s/
                                    Henry E. Hudson
                                    United States District Judge

Dated: Jan. 23, 2014
Richmond, VA